**Case No. 24-3371**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KENNETH BANKS
Plaintiff-Appellant,

v.

FOUNDATION AUTOMOTIVE CORPORATION, *et al.*

Defendants-Appellees.

On Appeal From The United States District Court for the Northern District of Ohio
Case No. 1:20-CV-02026, Judge David A. Ruiz

---

**BRIEF FOR APPELLANT KENNETH BANKS**

---

*/s/ Taurean J. Shattuck*

Taurean J. Shattuck (0097364)
**SPITZ, THE EMPLOYEE'S LAW FIRM, LLC**
3 Summit Park Blvd., Ste. 200
Independence, OH  44131
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: taurean.shattuck@spitzlawfirm.com

*Attorney for Appellant Kenneth Banks*

# **TABLE OF CONTENTS**

STATEMENT IN SUPPORT OF ORAL ARGUMENT ................................................................. 5

STATEMENT OF JURISDICTION......................................................................................... 6

STATEMENT OF ISSUES ................................................................................................... 6

STANDARD OF REVIEW .................................................................................................... 7

PROCEDURAL FACTS ....................................................................................................... 7

STATEMENT OF THE CASE............................................................................................... 9

SUMMARY OF FACTS ....................................................................................................... 9

ARGUMENT ..................................................................................................................... 13

    I.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO APPELLANT'S DISABILITY DISCRIMINATION CLAIM. ...................................... 13

    II.   THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO APPELLANT'S RETALIATION CLAIM........................................................................ 18

    A.   Prima Facie Case.................................................................................. 18

        1.   Banks Engaged In Protected Activity and Defendants Were Aware Of It. .......... 18

        2.   Banks' Causation Burden For His Prima Facie Case Is Very Minimal................ 20

    III.  THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO APPELLANT'S AIDING AND ABETTING CLAIM. .................................................... 24

CONCLUSION.................................................................................................................. 25

CERTIFICATE OF COMPLIANCE.................................................................................... 26

CERTIFICATE OF SERVICE ............................................................................................ 26

ADDENDUM: DESIGNATION OF DOCUMENTS.................................................................. 27

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ...... 7

*Bloomfield v. Whirlpool Corp.*, 984 F.Supp.2d 771 (N.D. Ohio 2013) ...................................... 16

*Brenneman v. MedCentral Health Sys.*, 366 F.3d 412 (6th Cir. 2004). .............................................. 13

*Chaniott v. DCI Donor Services, Inc.,* 481 F.Supp.3d 712 (M.D. Tenn. 2020) .......................... 16

Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579 (6th Cir.2002) ...................................................... 21

*Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 149 L. Ed. 509 (2001)... 21, 22

*Crawford v. Metro. Government of Nashville and Davidson County*, 555 U.S. 271, 129 S. Ct. 846 (2009). .................................................................................................................................... 19

Denton v. Safeguard Properties, LLC, 2017 WL 3971635 (N.D. Ohio) ...................................... 21

*Dews v. A.B. Dick Co.*, 231 F.3d 1016 (6th Cir. 2000) .......................................................................... 7

*Dover v. Carmeuse Natural Chemicals,* 2010-Ohio-5567 .................................................................. 21

*Dover v. Carmeuse Natural Chems.,* 2010-Ohio-5657 (5th Dist.) .................................................. 23

*Ferrari v. Ford Motor Company*, 826 F.3d 885 (6th Cir. 2016) ...................................................... 13

*Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007 Ohio 6442, 879 N.E.2d 174 (2007). ........... 18

*Grubbs v. Delphi Automotive Systems, LLC*, 2018 Ohio 2352 (11th Dist.) .................................. 22

*Hall v. Spencer County, Ky.*, 583 F.3d 930, 933 (6th Cir. 2009) ......................................................... 7

*Hood v. Diamond Products, Inc.*, 74 Ohio St. 3d 298, 658 N.E.2d 738 (Ohio 1996) ....................... 15

*Hughes v. Miller*, 181 Ohio App.3d 440, 2009 Ohio 963 (8th Dist. 2009) .................................. 19

*Johnson-Newberry v. Cuyahoga County Child and Family Services*, 144 N.E.3d 1058 (8th Dist. 2019) ........................................................................................................................................ 24

*King v. Steward Trumbull Memorial Hospital, Inc.*, 30 F.4th 551 (6th Cir. 2022) ..................... 17

*Kosut v. First Energy Club*, 2013-Ohio-2876; 2013 Ohio App. LEXIS 2918 ............................. 21

*Kosut v. First Energy Corp.*, 2013 Ohio 2876 (7th Dist.) .................................................................. 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986) ........................ 7

*McGriff v. Beavercreek City School District*, 2021 WL 2401921 (S.D. Ohio 2021). ...................... 15

*Merriweather v. Zamora*, 569 F.3d 307, 313 (6th Cir. 2009) ............................................................. 7

*Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173 (6th Cir. 1996) ..................................................... 13

*Morrissey v. Laurel Health Care Co.*, 946 F.3d 292 (6th Cir. 2019) ......................................... 15, 16

*Moscato v. Ohio State University,* 2013-Ohio-3631 ............................................................................ 21

*Mullenix v. Eastman Chemical Company*, 237 F.Supp.3d 695 (E.D. Tenn. 2017) ..................... 16

*Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000) ......................................................... 18, 21

*Ningard v. Shin Etsu Silicones*, 2009-Ohio-3171, 2009 Ohio App. LEXIS 2704 ........................ 21

*Payton v. Receivables Outsourcing, Inc.* 163 Ohio App. 3d, 2005-Ohio-4978 ..................... 21, 23

*Phillips v. Roane County, Tenn.*, 534 F.3d 531, 538 (6th Cir. 2008) ............................................... 7

*Proffitt v. Metro. Govt. of Nashville and Davidson Cty., Tenn.*, 150 Fed.Appx. 439 (C.A.6, 2005) ..................................................................................................................................................... 19

*Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806 (6th Cir. 2011) .................................................. 21

*Scott v. Eastman Chem. Co.*, 275 Fed.Appx. 466 (C.A.6, 2009) ...................................................... 19

*Smith v. Superior Prod.,* 10th Dist., 2014-Ohio-1961, 13 N.E.3d 664, ¶ 33, citing *Harrison v. Metro. Govt. Of Nashville,* 80 F.3d 1107, 1119 (6th Cir.1996), *overruled on other grounds by Jackson v. Quanex Corp.,* 191 F.3d 647, 667 (6th Cir.1999) ......................................................................... 22

*Thatcher v. Goodwill Industries,* 117 Ohio App. 3d 525 ......................................................... 21, 23

*Vogt v. Total Renal Care, Inc.*, 2016 WL 3763074 (8th Dist.) ...................................................... 21

*Watkins v. Shriners Hospitals for Children, Inc.*, 2020 WL 2309468 (E.D. KY) ........................ 16
*White v. Columbus Metropolitan Housing Auth.*, 429 F.3d 232 (6th Cir. 2005) .......................... 21
*Wholf v. Tremco, Inc.*, 26 N.E.3d 902, 2015 Ohio 171 (8th Dist.) ......................................... 21, 22
*Zechar v. Ohio Department of Education,* 121 Ohio Misc. 2d 52; 2002-Ohio-6873 ................... 21
*Zechar v. Ohio Dep't of Education*, 121 Ohio Mis. 2d 52, 2002-Ohio-6873, 782 N.E. 2d 163... 23

### Statutes

28 U.S.C. § 1291 ........................................................................................................................ 9
28 U.S.C. § 1441 ........................................................................................................................ 8
29 C.F.R. § 1630.2(j) ......................................................................................................... 14, 15, 16
42 U.S.C. § 12102(1)(A)-(C) .................................................................................................. 14
42 U.S.C. § 12102(4)(E)(i)(I) .................................................................................................. 15
R.C. § 4112.01 ........................................................................................................................ 23
R.C. § 4112.01(A)(16) ............................................................................................................ 17
R.C. § 4112.01(A)(16)(a)(iii) .................................................................................................. 14
R.C. § 4112.02 .............................................................................................................. 8, 13, 18
R.C. § 4112.02(I) .................................................................................................................... 18
R.C. § 4112.02(J) .................................................................................................................... 24

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Appellant requests an oral argument in this matter. The issues presented can be more fully explored if the parties are allowed the opportunity to present an oral argument to supplement this Brief. As the Court can discern from Appellant's Brief, the issues up for review necessitate not only a lengthy Brief, but also oral arguments before this Court so that the issues may be properly addressed.

**STATEMENT OF JURISDICTION**

The judgment of the Northern District Court of Ohio granting Appellee's Motion for Summary Judgment was entered on March 28, 2024. The Notice of Appeal was filed on April 23, 2024. This Court acknowledged Appellant's Notice of Appeal on April 30, 2024. The jurisdiction of this Court rests pursuant to 28 U.S.C. 1291.

**STATEMENT OF ISSUES**

1. Whether the district court erred in weighing the evidence in favor of Appellees and granting summary judgment despite questions of material fact that remain for a jury to decide in Banks' Disability Discrimination claims?

2. Whether the district court erred in weighing the evidence in favor of Appellees and granting summary judgment despite questions of material fact that remain for a jury to decide in Banks' Retaliation claims?

3. Whether the district court erred in weighing the evidence in favor of Appellees and granting summary judgment despite questions of material fact that remain for a jury to decide in Banks' Aiding and Abetting claims?

**STANDARD OF REVIEW**

This court's standard of review for the district court's grant of summary judgment is *de novo. Dews v. A.B. Dick Co.*, 231 F.3d 1016 (6th Cir. 2000).

The moving party "bears the burden of *proving* that there are no genuine issues of material fact." *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 538 (6th Cir. 2008). The non-moving party must then "come forward with 'specific facts showing a genuine issue for trial.'" *Merriweather v. Zamora*, 569 F.3d 307, 313 (6th Cir. 2009). A court must review all facts and inferences in a light most favorable to the non-moving party. *Hall v. Spencer County, Ky.*, 583 F.3d 930, 933 (6th Cir. 2009).

An entry of summary judgment can be upheld only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For a fact to be material, it must affect the outcome of the suit, as "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Like the district court, this Court must view the entire record in a light most favorable to the party opposing summary judgment and draw all reasonable inferences in that party's favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986).

**PROCEDURAL FACTS**

On July 22, 2020, Appellant Kenneth Banks, filed a Complaint with jury demand in the Cuyahoga County Court of Common Pleas against Foundation Automotive Corp. ("Foundation"),

Motorcars Honda ("Motorcars"), Kevin Kutschinski, Chuck Kramer, Charles Gile, and Trevor Gile (collectively, "Defendant-Appellees"). The Complaint included seven counts.

On September 9, 2020, Defendant-Appellees filed a Notice of Removal for diversity pursuant to 28 U.S.C. § 1441 *et seq.* to the United States District Court for the Northern District of Ohio. On October 29, 2020, Appellant filed an Amended Complaint against Defendant-Appellees that similarly included seven counts: Count I alleged Breach of Contract, Count II alleged Promissory Estoppel, Count III alleged Unjust Enrichment, Count IV alleged Disability Discrimination in violation of Ohio R.C. § 4112.02, Count V alleged Retaliation in violation of Ohio R.C. § 4112.02, Count VI alleged Aiding and Abetting in violation of R.C. § 4112.02, and Count VII alleged Fraud.

On November 10, 2021, Appellees filed a Motion for Extension of the Discovery Deadline through March 15, 2022, which was granted by the district court on November 11, 2021.

On October 24, 2022, Appellees filed a Motion to Quash a Non-Party Subpoena. On November 3, 2022, Appellant filed a Brief in Opposition to Appellees' Motion to Quash a Non-Party Subpoena. On November 10, 2022, Appellees filed a Reply in Support of their Motion to Quash a Non-Party Subpoena.

On February 28, 2023, Appellees filed their Motion for Summary Judgment. On April 27, 2023, Appellant filed his Partial Brief in Opposition to Appellees' Motion for Summary Judgment. On May 22, 2023, Appellees filed a Motion to Strike the Declaration of Sam Choe. Also on May 22, 2023, Appellees filed their Reply in Support of their Motion for Summary Judgment. On May 31, 2023, Appellant filed a Motion for Leave to File Surreply to Appellees' Motion for Summary Judgment. On June 2, 2023, Appellees filed their Brief in Opposition to Appellant's Motion for Leave to File Surreply to Appellees' Motion for Summary Judgment. On June 5, 2023, Appellant

filed his Brief in Opposition to Appellees' Motion to Strike the Declaration of Sam Choe. On June 12, 2023, Appellees filed their Reply in Support of their Motion to Strike the Declaration of Sam Choe.

On March 28, 2024, the district court issued a Memorandum Opinion and Order granting in part, and denying in part, Appellees' Motion for Summary Judgment. On April 23, 2024, Appellant filed a timely Notice of Appeal at the U.S. Court of Appeals for the Sixth Circuit. Pursuant to 28 U.S.C. § 1291, this Circuit Court now has jurisdiction over this appeal.

## STATEMENT OF THE CASE

Appellant is asking this Court to reverse the district court's judgment finding that Appellees were entitled to Summary Judgment as follows:

On Count IV, Disability Discrimination, the district court found that no reasonable jury could find that 1) Appellant was disabled under the law, and 2) that Foundation, Kutschinski, and Kramer had knowledge of his disability. Appellant disagrees.

On Count V, Retaliation, the district court did not even address Appellant's claims.

On Count VI, Aiding and Abetting, the district court did not even address Appellant's claims.

## SUMMARY OF FACTS

Appellant Kenneth Banks is an African American man who has spent his entire career since high school in car sales.[1] Banks' career was littered with success, including being the recipient of the Automotive News 40 under 40 award.

---

[1] Banks Depo. I at 16 (Excerpts from Banks' first deposition held on March 8, 2022 have been attached hereto as Exhibit A).

While Banks experienced success overcoming professional challenges, he also battled a personal challenge: a diagnosis of multiple sclerosis ("MS").[2] Due to his MS, Banks suffers from multiple symptoms, including fatigue, foot drop, and depression.[3] Accordingly, Banks takes several medications to combat his symptoms, including Ampyra, medication that helps him walk; Lexapro, medication for his depression; and Ocrevus, an infusion medication, like chemotherapy, that limits the number of lesions that he gets from his MS.[4] Banks' MS has affected his ability to care for himself, to perform manual tasks, and to walk.[5]

While working as a General Manager at Levittown Ford in New York, Appellee Foundation Automotive Corp. ("Foundation") through Chuck Kramer, its Chief Operating Officer, began recruiting Banks to be the General Manager and Managing Partner for two dealerships it was intending to purchase in Cleveland, Ohio.[6] The two dealerships Foundation sought to purchase were a Honda dealership ("Motorcars Honda") and Toyota dealership ("Motorcars Toyota") (collectively, "Motorcars") owned by Motor Cars, Inc.

During the discussions, Banks informed Kramer that while he was interested in being a partner for the ownership benefits, he did not have the personal liquidity and would need to obtain a loan to buy into the partnership.[7] Kramer assured Banks that he would just be the General Manager until he was able to close on his partnership and that Foundation would not let him go.[8]

During his recruitment, Banks also spoke with Kevin Kutschinski, Foundation's President and Chief Executive Officer.[9] In fact, it was Banks' conversations with Kutschinski that ultimately

---

[2] Banks Depo. I at 90.
[3] *Id.* at 112-114.
[4] *Id.* at 8.
[5] Banks Declaration (A copy of Banks' declaration has been attached hereto as Exhibit B).
[6] Banks Depo. I at 25-26, 37.
[7] *Id.* at 39-40, 58.
[8] *Id.* at 59.
[9] *Id.* at 68.

pushed Banks to accept Foundation's offer of employment on December 12, 2018.[10] After Banks communicated his acceptance, Foundation promoted Banks' candidacy as the Dealer Principal in its submissions to Honda and Toyota seeking approval to purchase the dealerships from Motorcars.[11] In promoting Banks' candidacy as the Dealer Principal, Foundation was utilizing Banks' status as a minority to bolster its chances at approval for the purchases.[12] Banks then submitted partnership applications to both Honda and Toyota reflecting his intention to have an ownership stake in the dealerships while also working as the general manager.[13] Shortly thereafter, Banks executed a pay plan with Foundation on December 28, 2018 ("Pay Plan").[14]

Banks moved from New York to Cleveland to begin his employment. After arriving in Cleveland and beginning his employment in January 2019, Banks quickly realized that many of the promises made to him during the recruitment process would not be honored. Banks intended to have management autonomy over both the Honda and Toyota dealerships, but was instructed to camp at the Honda dealership only.[15] While Banks was at the Honda dealership, Sam Choe was running the Toyota dealership.[16] Banks also found out that there was a management agreement in place between Trevor and Chuck Giles, the owners of Motorcars, and Foundation, but did not review the management agreement.[17]

In January 2019, Banks reached out to Comerica Bank to seek a loan for his partnership share when Foundation's deal to purchase Motorcars.[18] During this process, Foundation through

---

[10] *Id.* at 68-69.
[11] Exhibit C (A copy of Foundation's OEM Presentation to both Toyota and Honda have been attached hereto as Exhibit C).
[12] Banks Depo. I at 62.
[13] *Id.* at 179-181.
[14] *Id.* at 128-129; Exhibit D (A copy of the Pay Plan has been attached hereto as Exhibit D).
[15] Banks Depo. I at 81.
[16] *Id.* at 171.
[17] *Id.* at 82.
[18] *Id.* at 97.

Kramer and Kutschinski, along with Banks, had a telephone call with Comerica Bank regarding Banks' potential loan.[19] Following this phone call, Banks communicated to Kramer and Kutschinski that Comerica Bank needed more information regarding the partnership loan in order to close.[20]

In February 2019, Banks informed Kramer and Kutschinski that he suffered from MS.[21] Despite initially informing Kramer and Kutschinski that he had zero symptoms and did not affect his work, Banks requested an accommodation for his work schedule due to suffering from fatigue.[22] Notably, Banks spoke regularly about fatigue and his schedule, as well as his depression.[23] Additionally, after the disclosure of his MS, Kramer referred to Banks as a drama king when he discussed his fatigue.[24]

In late February 2019, Banks reached out to Jeff Jeans, the individual handling human resources matters for Foundation, to express concerns that he was having with his employment, including his medical prognosis.[25]

On March 7, 2019, following a doctor's appointment at the Cleveland Clinic, Banks was called into Chuck Gile's office with Brittany Shearer, Jeans, and Choe, where his employment was terminated.[26] During that meeting, it was communicated that the reason for termination was Banks' inability to buy into the partnership and that he told an employee that he was an MMA fighter and it made the employee uncomfortable.[27]

---

[19] *Id.*
[20] *Id.* at 99.
[21] *Id.* at 90.
[22] *Id.* at 85, 113.
[23] *Id.* at 114-115.
[24] *Id.* at 168.
[25] *Id.* at 181, 184-185.
[26] *Id.* at 190-191.
[27] *Id.* at 194-195.

## ARGUMENT

**I.　THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO APPELLANT'S DISABILITY DISCRIMINATION CLAIM.**

As stated by the Sixth Circuit Court of Appeals in *Brenneman v. MedCentral Health Sys.*, disability discrimination claims under the ADA and R.C. § 4112.02 "can be analyzed together because they use the same evidentiary standards."[28] To establish a claim for disability discrimination under the indirect method, Banks must raise a genuine question of fact establishing a prima facie case of discrimination by showing that (1) he is disabled, (2) he is otherwise qualified for the position, with or without reasonable accommodation, (3) he suffered an adverse employment decision, (4) Appellees knew or had reason to know of Banks' disability, and (5) the position remained open while Appellees sought other applicants or Banks was replaced.[29]

At their Motion for Summary Judgment, Appellees did not dispute the second, third, or fifth elements. Regarding the first element, the district court found that Banks failed to show that he was disabled under the law because while he suffered a physical impairment listed under Ohio's disability statute, the record was not sufficient to reflect that the physical impairment substantially impaired one or more of his major life activities during the relevant time period. Regarding the fourth element, the district court found that Banks failed to show evidence that Appellees knew or had reason to know of his disability. Appellant disagrees with the district court's findings.

### A.　Banks Is Disabled Under Ohio Law.

An individual is considered "disabled" for purposes of a discrimination claim if he has "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking,

---

[28] 366 F.3d 412, 418 (6th Cir. 2004).

[29] *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996); *Ferrari v. Ford Motor Company*, 826 F.3d 885, 891-892 (6th Cir. 2016).

breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."[30] Specifically, R.C. § 4112.01(A)(16)(a)(iii) lists multiple sclerosis as a disease or condition that qualifies as a physical impairment.

Moreover, since the adoption of the ADAAA, the definition of "disability" has broadened. Specifically, the Code of Federal Regulations, 29 C.F.R. § 1630.2(j) states in part:

> (i) The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard.

> (ii) An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

> (iii) The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis.

> (iv) The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for "substantially limits" applied prior to the ADAAA.

Likewise, a condition which may be largely controlled by medication, is still a disability under the ADAAA because the ameliorative effects of medication cannot be taken into account when determining whether a mental impairment constitutes a disability, per Section 12102(4)(E) of the ADAAA:

> (E)

---

[30] 42 U.S.C. § 12102(1)(A)-(C).

> (i) The determination of whether an impairment substantially limits a major life activity shall be made **without regard to the ameliorative effects** of mitigating measures such as
>
>> (I) **medication**, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;[31]

Moreover, per Code of Federal Regulations section § 1630.2(j)(vii), "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."[32] This standard is coupled with the fact that the definition of *actual* disability does not include the "transitory and minor" analysis, meaning, "The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section."[33]

Banks also is not legally required to present evidence from a physician or expert in order to support a finding that he is disabled. On point, the Ohio Supreme Court flatly rejected this same argument in *Hood v. Diamond Products, Inc.*, holding that the plaintiff's own testimony regarding her cancer condition was sufficient Rule 56 evidence to support the "disability" element of his disability discrimination claim.[34] Recently, the United States District Court for the Southern District of Ohio held the same in *McGriff v. Beavercreek City School District*.[35] Therein, the defendant-employer argued that the plaintiff was unable to demonstrate that her fibromyalgia constituted a disability under the ADA because she failed to provide any expert testimony regarding whether it substantially limited a major life activity. The district court disagreed and held that the plaintiff's own testimony was sufficient:

> To establish a prima facie case of disability and show that she is "actually disabled" under this first definition of disability, **McGriff is not required to**

---

[31] 42 U.S.C. § 12102(4)(E)(i)(I). (**Emphasis** added).

[32] 29 C.F.R. § 1630.2(j)(1)(vii).

[33] 29 C.F.R. § 1630.2(j)(1)(ix).

[34] 74 Ohio St.3d 298, 303-04, 658 N.E.2d 738, 1999 Ohio 259.

[35] 2021 WL 2401921 (S.D. Ohio). *See also Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 300 (6th Cir. 2019).

**present expert testimony diagnosing her fibromyalgia**. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 300 (6th Cir. 2019) (plaintiff need not show that her disability renders her unable to work and need not tell her employer about her specific diagnosis). Instead, McGriff need only show that her impairment substantially limits one or more of her "major life activities." Although Defendant argues that Plaintiff failed to identify a major life activity impaired by her fibromyalgia and only testified to being unable to exercise and participate in her favorite hobbies, her testimony also included difficulty sleeping and concentrating resulting in fatigue and anxiety. These symptoms required her to rest in the middle of her teaching day. She has also stated that fibromyalgia affects her nerve endings, ability to withstand extreme heat and cold and that it causes sciatica. She testified that the fatigue was exacerbated by traveling to Ferguson Hall.[36]

This holding echoes the Code of Federal Regulations' language that the "substantially limits" analysis for an ADA disability is not an extensive one:

> The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, **the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis**.

> The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population **usually will not require scientific, medical, or statistical analysis**. Nothing in this paragraph is intended, however, to prohibit the presentation of scientific, medical, or statistical evidence to make such a comparison where appropriate.[37]

Case law since the ADAAA has reflected this relaxed standard.[38]

Here, Banks suffers from multiple sclerosis, or MS. As outlined in R.C. § 4112, Banks' MS constitutes a physical impairment. Due to suffering from MS, Banks experiences fatigue, depression, and foot drop, which affects his ability to care for himself, to perform manual tasks, and to walk.[39]

---

[36] *Id.* at *8. (**Emphasis** added).
[37] 29 C.F.R. § 1630.2(j)(1)(iii) and (v). (**Emphasis** added).
[38] *See e.g. Bloomfield v. Whirlpool Corp.*, 984 F.Supp.2d 771 (N.D. Ohio 2013); *Chaniott v. DCI Donor Services, Inc.,* 481 F.Supp.3d 712 (M.D. Tenn. 2020); *Mullenix v. Eastman Chemical Company*, 237 F.Supp.3d 695 (E.D. Tenn. 2017), *Watkins v. Shriners Hospitals for Children*, *Inc.*, 2020 WL 2309468 (E.D. KY).
[39] Banks Declaration.

While Appellee argued that Banks informed Kramer and Kutschinski that he was experiencing no symptoms and did not affect his ability to work, that is not determinative of whether or not Banks is considered disabled under the law. All that is required is for Banks to show that his condition substantially affects **one or more** major life activity, not that it substantially affects any particular major life activity, specifically working. As Banks' MS affects his ability to care for himself, to perform manual tasks, and to walk, all major life activities listed in R.C. § 4112.01(A)(16), there is at least a genuine issue of material fact whether Banks is disabled under the law.

While the district court concentrated its findings that Banks did not learn that his foot drop or fatigue were in fact symptoms of his MS, the record still shows that not only did he suffer from these symptoms, but he likewise communicated that he was experiencing these symptoms to Appellees. As there is at least a genuine issue of material fact present in this matter, this Court should remand this case back to the district court for trial.

### B.  Banks Presented Evidence That Appellees Knew Or Had Reason To Know Of His Disability.

According to the Sixth Circuit Court of Appeals:

> An employer has notice of the employee's disability when the employee tells the employer that she is disabled. Of course, the employee need not use the word disabled, but the employer must know enough information about the employee's condition to conclude that she is disabled. Relevant information could include, among other things, a diagnosis, a treatment plan, apparent severe symptoms, and physician-imposed work restrictions.[40]

Here, Banks specifically informed Kramer and Kutschinski of his MS in writing in February 2019.[41] While Appellees argued that they did not have reason to know of Banks' disability because he failed to tell them about his symptoms, Defendants completely ignore the fact that it had enough

---

[40] *King v. Steward Trumbull Memorial Hospital, Inc.*, 30 F.4th 551, 563-564 (6th Cir. 2022). (internal citations omitted).
[41] Banks Depo. I at 90.

information to conclude that Banks was disabled under the law, where he specifically informed Appellees of his diagnosis. Additionally, even as late as the date of his termination, Banks informed Appellees that he was attending doctor's appointments related to his MS.[42] Thus, at least a genuine issue of material fact whether Appellees knew of Banks' disability exists.

## II. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO APPELLANT'S RETALIATION CLAIM.

### A. Prima Facie Case.

R.C. § 4112.02(I) provides that it is unlawful "for any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."[43] To establish a case of retaliation, Banks must show that: (1) he engaged in a protected activity, (2) the defending party was aware that he engaged in that activity, (3) the defending party took an adverse action against him, and (4) there is a causal connection between the protected activity and adverse action.[44] The burden of meeting a prima facie retaliation case "**is not onerous, but one easily met**." [45] As the district court did not address this claim in its Memorandum and Opinion, Banks reiterates his argument as made in opposition to Appellees' Motion for Summary Judgment. There, Appellees disputed the first, second, and fourth elements.

### 1. Banks Engaged In Protected Activity and Defendants Were Aware Of It.

As to the first and second elements, there can be no dispute that Banks' complaints to Jeans constituted protected activity under Ohio law. Indeed, in *Crawford v. Metro. Government of*

---

[42] Banks Depo. II at 90 (Excerpts from Banks' second deposition held on March 21, 2022 have been attached hereto as Exhibit E).

[43] R.C. § 4112.02(I) (**Emphasis** added).

[44] *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007 Ohio 6442, 879 N.E.2d 174 (2007).

[45] *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). (**Emphasis** added).

*Nashville and Davidson County,* the United States Supreme Court held that "an employee's filing of an internal complaint with an employer constitutes protected activity" under Title VII.[46] Furthermore, in *Hughes v. Miller*, the Eighth District Court of Appeals applied the holding in *Crawford* to R.C. § 4112.02(I) and even broadened the definition of "protected activity" to not only include an internal complaint to an employer but also an employee's participation in an investigation by the employer whereby the employee answers questions posed during the investigation.[47]Likewise, an employee has engaged in protective activity when he participates in an investigation regarding a complaint of discrimination, whether the complaint is his or someone else's. To this point, R.C. § 4112.02(I) provides:

> [It shall be an unlawful discriminatory practice] For any person to discriminate in any manner against any other person because that person has **opposed any unlawful discriminatory practice** defined in this section or because that person has made a **charge**, **testified**, assisted, or **participated in any manner in any investigation**, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.[48]

Moreover, to be liable for retaliating against an employee for taking part in a protected activity, the employer must have **knowledge** of it. "**Knowledge may be inferred from evidence in the record**."[49] Indeed, to survive summary judgment, the plaintiff does not have to present "direct evidence" that the employer knew about the protected activity; rather, circumstantial evidence will suffice.[50] In *Meyers v. Goodrich Corp.*, the Eighth District Court of Appeals applied this test:

> Goodrich argues that it is undisputed that the three people who decided to terminate Meyers, namely, Stringer, Rohlfs, and Buchanan, did not know that Winter had interviewed Meyers. While it is true that Rohlfs and Stringer

---

[46] 555 U.S. 271, 129 S. Ct. 846 (2009).
[47] 181 Ohio App.3d 440, 449-450, 2009 Ohio 963 (8th Dist. 2009).
[48] **Emphasis** added.
[49] See, e.g., *Proffitt v. Metro. Govt. of Nashville and Davidson Cty., Tenn.* (C.A.6, 2005), 150 Fed.Appx. 439, 442-43 (stating that direct evidence of **knowledge** not required, and a plaintiff 'may survive summary judgment by producing circumstantial evidence to establish this element of her claim'). (**Emphasis** added).
[50] *Scott v. Eastman Chem. Co.* (C.A.6, 2009), 275 Fed.Appx. 466, 482.

testified in their depositions that they were not aware of Meyers's involvement in Winter's investigation, Buchanan's involvement was not as clear.

Buchanan agreed that he recalled an incident where "there was a **complaint** of discrimination or harassment and Mr. Meyers was involved as a witness." When asked to further explain, Buchanan stated, "I had investigated a situation, and if I can recall, I think that Mr. Meyers — in fact, I know Mr. Meyers was named as a person that we should talk to." Buchanan testified that the "situation" involved a racial **complaint** that was raised by Burden against Manfredonia. When asked if he or Winter spoke to Meyers regarding that **complaint,** Buchanan could not recall. But Buchanan did recall interviewing Christine Anderson, Don Wallace, and Maxy Scott about the allegations.

Based on this evidence, we disagree with the trial court that Meyers did not establish that there was — at least — a question of fact as to whether one of the three decision-makers, namely, Buchanan, **knew** that Meyers took part in the investigation.

Thus, we conclude that for purposes of summary judgment, Meyers raised genuine issues of material fact as to the second element of a prima facie case of **retaliation**, i.e., the employer's **knowledge.**[51]

In the present matter, Banks reached out to Jeans, the individual handling human resources matters for Foundation, in late February 2019 to express concerns that he was having with his employment, including his medical prognosis.[52] As Jeans was responsible for the human resources matters for Foundation, knowledge of Banks' complaints are attributed to the Appellees. Accordingly, Banks has provided evidence to at least establish a genuine issue of material fact related to the first and second elements of his retaliation claim.

2.   Banks' Causation Burden For His Prima Facie Case Is Very Minimal.

In *Wholf v. Tremco, Inc.*, the Eighth District Court of Appeals, after examining the "but for" causation standard, both to federal and Ohio retaliation claims, held:

Pursuant to *Burdine,* the plaintiff is not required to conclusively prove all the elements of his claim at the prima facie stage of the burden-shifting analysis.

---

[51] 2011 Ohio 3261, ¶ 23-26 (8th Dist.).
[52] Banks Depo. I at 181, 184-185; Banks Declaration.

\* \* \*

> **Wholf was not required to conclusively establish the causation element of his claim at the first stage of the *McDonnell Douglas* test**; he was only required to produce evidence demonstrating that appellees took adverse employment action against him because of his participation in protected activity.[53]

Also, when examining the prima facie elements, courts <u>must avoid conflating</u> the plaintiff's burden with the legitimate business reason/pretext elements of the *McDonnell Douglas* test.[54]

A causal connection is shown through direct evidence or through knowledge coupled with a closeness in time that creates an inference of causation.[55] Ohio courts have held that temporal proximity alone is sufficient to establish the third element, causation for a prima facie case.[56] In *Clark City School District v. Breeden*[57], the Supreme Court held in part that in cases involving temporal proximity, "cases that accept mere temporal proximity between an employer's knowledge of [the] protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'." Temporal proximity as evidence of causation has been a precedent has been consistently applied by courts throughout the state of Ohio.[58] Close temporal proximity between the employer's knowledge of the protected activity

---

[53] 26 N.E.3d 902, 2015 Ohio 171, ¶ 47 (8th Dist.) (**Emphasis** added); see also *Vogt v. Total Renal Care, Inc.*, 2016 WL 3763074, \*7 (8th Dist.); *Denton v. Safeguard Properties, LLC*, 2017 WL 3971635 (N.D. Ohio)].

[54] *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813-14 (6th Cir. 2011); *White v. Columbus Metropolitan Housing Auth.*, 429 F.3d 232, 242 (6th Cir. 2005); *Cicero v. Borg-Warner Auto., Inc.,* 280 F.3d 579, 584-85 (6th Cir.2002).

[55] *Nguyen v. Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000); *Meyers v. Goodrich Corporation*, 2011 Ohio 3261 (8th Dist. 2011).

[56] *See, Ningard v. Shin Etsu Silicones*, 2009-Ohio-3171, 2009 Ohio App. LEXIS 2704, *and Thatcher v. Goodwill Industries,* 117 Ohio App. 3d 525 (court held three weeks is sufficient for causation), *Payton v. Receivables Outsourcing, Inc.* 163 Ohio App. 3d, 2005-Ohio-4978 (sexual harassment complaint closely followed by adverse employment action sufficient for causation).

[57] *Clark Cty. School Dist. v. Breeden* (2001), 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L. Ed. 2d 509. 2010-Ohio-5657, \*P45; 2010 Ohio App. LEXIS 4774, \*\*12

[58] *See also, Dover v. Carmeuse Natural Chemicals,* 2010-Ohio-5567, *Zechar v. Ohio Department of Education,* 121 Ohio Misc. 2d 52; 2002-Ohio-6873, *Moscato v. Ohio State University,* 2013-Ohio-3631; *Kosut v. First Energy Club*, 2013-Ohio-2876; 2013 Ohio App. LEXIS 2918, *Payton v. Receivables Outsourcing, Inc.* 163 Ohio App. 3d 722, 2005-Ohio-4978, *Thatcher v. Goodwill Industries,* 117 Ohio App. 3d 525, 690 N.E.2d 1320.

and the adverse employment action **alone may be significant enough to constitute evidence of a causal connection**.[59]

Indeed, recently, in *Grubbs v. Delphi Automotive Systems, LLC*, the Eleventh District Court of Appeals reversed summary judgment on Grubbs' retaliation claim based on evidence that Grubbs had been disciplined by the company in the year-period between his filing of two EEOC charges in 2011 and 2012, and was then terminated *over a year* later in 2014.[60] The court, citing to *Wholf*, held, "Admittedly, 'the less time that passes between the protected activity and the retaliatory action, the more conspicuous the causal connection,' however, '**retaliation has been found when termination followed the protected activity by over one year**.'"[61]

Indeed, in *Wholf*, the Eighth District Court of Appeals reversed summary judgment on Wholf's retaliation claim, holding as follows:

> Obviously, the less time that passes between the protected activity and the retaliatory action, the more conspicuous the causal connection. Nevertheless, "retaliation has been found when termination followed the protected activity by over one year." *Smith v. Superior Prod.,* 10th Dist., 2014-Ohio-1961, 13 N.E.3d 664, ¶ 33, citing *Harrison v. Metro. Govt. Of Nashville,* 80 F.3d 1107, 1119 (6th Cir.1996), *overruled on other grounds by Jackson v. Quanex Corp.,* 191 F.3d 647, 667 (6th Cir.1999).
>
> Several months elapsed between Wholf's first complaint of harassment to Nowak in February 2010 and his apparent demotion from manager to coordinator and data entry worker in November 2010. However, Wholf continued to lodge complaints against Nowak and made his first complaints against Halkovics and Solether during this nine-month period. Indeed, appellees' retaliatory acts became increasingly more harsh as Wholf persisted with his complaints. We therefore find there is a genuine issue of material fact as to whether appellees retaliated against Wholf because of his protected activity.[62]

See also: *Thatcher v. Goodwill Industries of Akron*, (the Ninth District Court of Appeals held that a "three-week interval" between the protected activity and the adverse employment action was

---

[59] *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001) (**Emphasis** added).
[60] 2018 Ohio 2352, ¶ 41 (11th Dist.).
[61] *Id.* (**Emphasis** added), citing *Wholf,* supra, 2015 Ohio 171, ¶ 54.
[62] *Wholf*, 2015 Ohio 171 *at* ¶ 54.

sufficiently "close" to constitute evidence of a causal connection, without additional evidence);[63]

*Zechar v. Ohio Dep't of Education*, (the Ohio Court of Claims held that for the third element of

causation, that when there is an adverse employment action in close proximity to the protected activity,

"a prima facie case requires only a minimal showing before shifting the burden to the employer to

explain an adverse employment action.")[64]; *Dover v. Carmeuse Natural Chemicals*, (the Fifth District

Court of Appeals, in its decision to overturn the motion for summary judgment, held that "evidence

may be offered in support of an inference of retaliatory motive may include a showing that the exercise

of the protected conduct was closely followed by the adverse employment action…")[65]

Here, on March 7, 2019, *one week after making his complaints to Jeans*, Appellees terminated

Banks' employment.[66] The temporal proximity evidence, standing alone, raises a question of material

fact. For all of these reasons, this Court should remand this claim back to the district court for trial..

## A. Pretext

The pretext analysis for a retaliation claim is the same as for a claim of discrimination under

R.C. § 4112.01 *et seq.*[67] Here, the same pretext analysis described for Banks' disability discrimination

claim applies to his retaliation claim. Specifically, Banks has presented evidence showing that

Appellees' reasons for termination had no basis in fact, did not actually motivate Banks' termination,

nor was it sufficient for his termination. Banks' obligation to provide the funds for his 25% investment

into the partnership had not become effective because at the time of his termination, Appellees had not

closed on the purchase of either dealership. Appellees have also not provided any evidence that Banks

---

[63] 117 Ohio App.3d 525, 535, 690 N.E.2d 1320 (9th Dist. 1997). *See also Payton v. Receivables Outsourcing, Inc.*, 163 Ohio App. 3d 722, 2005 Ohio 4978 , 840 N.E.2d 236 (8th Dist.); *Kosut v. First Energy Corp.*, 2013 Ohio 2876, ¶ 52-53 (7th Dist.).

[64] *121 Ohio Mis. 2d 52, 2002-Ohio-6873, 782 N.E. 2d 163.*

[65] *Dover v. Carmeuse Natural Chems.* 2010-Ohio-5657 (5th Dist.).

[66] Banks Depo. I at 190-191.

[67] *Meyers v. Goodrich Corp.*, 2011 Ohio 3261 (8th Dist.); *Smith v. Ohio Dep't of Pub. Safety*, 2013 Ohio 4210 (10th Dist.); *Peterson v. Buckeye Casings*, 133 Ohio App.3d 715, 727, 729 N.E.2d 813 (10th Dist. 1999); *Davenport v. Big Bros & Big Sisters of the Greater Miami Valley*, 2010 Ohio 2503 (2nd Dist.).

was unable to secure a loan to cover his investment obligation. Similarly, Appellees have not produced any facts that evidence that Banks informed any of his staff members that he was an MMA fighter, let alone threatened them, or that any employee complained about it. Further, there is at least a genuine issue of material fact as to whether Banks was insubordinate. Thus, this Court should remand this claim back to the district court for trial.

### III.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO APPELLANT'S AIDING AND ABETTING CLAIM.

To show that an individual is liable for aiding and abetting in violation of R.C. § 4112.02(J), Banks would have to show that the individual "actively participate[d] in, or otherwise facilitate[d], another's discriminatory act in violation of R.C. § 4112.02."[68] Similar to Banks' retaliation claim, the district court failed to address this claim in its Memorandum and Opinion. Thus, Banks will continue to put forth the arguments he made in opposition to Appellees' Motion for Summary Judgment. There, Appellees based most of its arguments on their assertion that Banks cannot establish that he was subject to disability discrimination. As outlined in the arguments above, there is at least a genuine issue of material fact as to Banks' disability discrimination claim.

Further, Banks has provided sufficient evidence that the disability discrimination was perpetrated by Kramer and Kutschinski. It is not disputed that Banks communicated to both Kramer and Kutschinski that he suffered from MS. Banks also testified in his deposition that subsequent to this disclosure, Kramer made derogatory comments about Banks related to his medical condition.[69] Banks also testified that he discussed his accommodation request and his fatigue regularly with Kutschinski and was denied an accommodation.[70]

---

[68] *Johnson-Newberry v. Cuyahoga County Child and Family Services*, 144 N.E.3d 1058, 1064 (8th Dist. 2019).
[69] Banks Depo. I at 168.
[70] *Id.* at 114-115; Banks Depo. II at 80.

Accordingly, there is at least a genuine issue of material fact regarding Banks' aiding and abetting claims against Kramer and Kutschinski and this Court should remand this claim back to the district court for trial.

**CONCLUSION**

Based on the foregoing, Appellant Kenneth Banks respectfully requests that the district court's granting of summary judgment be reversed as to Counts IV, V, and VI. Further, Appellant requests that the district court's factual finding of the maximum damages as to Count I be vacated. Additionally, Appellant requests that his case be remanded for jury trial.

/s/ *Taurean J. Shattuck*

Taurean J. Shattuck (0097364)
**SPITZ, THE EMPLOYEE'S LAW FIRM, LLC**
3 Summit Park Blvd., Ste. 200
Independence, OH  44131
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: taurean.shattuck@spitzlawfirm.com

*Attorney for Appellant Kenneth Banks*

**CERTIFICATE OF COMPLIANCE**

Pursuant to FRAP 32(g), Appellant hereby certifies that his Appellant Brief complies with FRAP 32(a)(7)(B)(i) and contains 6,601 words applicable to the word count.

**CERTIFICATE OF SERVICE**

Appellant certifies that a copy of the foregoing Appellant Brief was filed electronically via the Court's Online ECF Filing System on July 24, 2024, and made available to all parties, including Appellees.

*/s/ Taurean J. Shattuck*

Taurean J. Shattuck (0097364)

**SPITZ, THE EMPLOYEE'S LAW FIRM, LLC**

**ADDENDUM: DESIGNATION OF DOCUMENTS**

1. Complaint, Pages ## 1 – 43.

2. RE 1, Notice of Removal, Page ID ## 1 – 53.

3. RE 9, First Amended Complaint, Page ID ## 76 – 96.

4. RE 10, Combined Answer, Page ID ##118 – 140.

5. RE 43-1 Banks Transcript, Page ID ## 286 – 546.

6. RE 43-2 Banks Transcript (ZOOM), Page ID #547 – 658.

7. RE 44, Defendant's Motion for Summary Judgment, Page ID ## 659 – 683.

8. RE 56, Memorandum Opinion and Order, Page ID ## 918 – 948.

9. RE 57, Judgment Entry - Summary Judgment for Defendants, Page ID # 949.

10. RE 60, Notice of Appeal to Sixth Circuit Court of Appeals, Page ID # 952.